**STATE BANK OF PARSONS, Parsons, KANSAS, a corporation, Plaintiff in Error,**

v.

**Vincent ELLIOTT, Nechia Elliott and Parsons Feed Yard, Inc., a corporation, Defendants in Error.**

**No. 41681.**

Supreme Court of Oklahoma.

Dec. 3, 1968.

Harris, Graham & Harris, Bartlesville, for plaintiff in error.

Wilkerson & Wilkerson, Pryor, for defendants in error.

BERRY, Justice.

Plaintiff in error, herein called the Bank, sued to recover upon three promissory notes executed by defendant corporation, and allegedly supported by a guaranty contract executed by defendant Elliott. Judgment was entered upon a jury verdict in defendant Elliott's favor as to two notes, and against him upon the third note. Matters hereafter summarized reflect the factual background which resulted in this appeal upon the original record.

After alleging the Bank's corporate existence and principal place of business in Parsons, Kansas, the petition set forth four causes of action. Thereunder the Bank sought recovery upon three notes executed by the defendant corporation at different times and allegedly due and unpaid, together with interest from due dates and the costs of this action. Liability was predicated upon a guaranty contract purportedly executed June 27, 1961, whereby defendant extended his personal credit up to $30,000.00

for benefit of defendant corporation, of which defendant was vice president.

A fourth cause of action alleging property transfers to defendant's wife for purpose of defrauding creditors also was alleged. However, demurrer to the evidence was sustained as to this cause of action, which need not be mentioned further. There was no service upon the corporate defendant, and the issues were tried as to defendant only.

Defendant answered generally denying allegations of the petition, although admitting execution of the guaranty. Defendant affirmatively alleged such instrument was unenforceable because unconscionable and inequitable, and without consideration. And, as originally drawn was never intended to be delivered, and defendant had been induced to sign such instrument by the Bank's fraud and misrepresentation in that the guaranty was represented to be a necessary formality to satisfy bank examiners. Further, defendant never intended to become a guarantor for the Parsons Feed Yard, Inc., and the corporate board had not authorized execution of two notes ($10,000.00 and $6,000.00) and corporation's president, Lackey, had no authority to execute such notes. The third note involved was endorsed by and became Jarboe's obligation and not part of defendant's alleged guaranty. Plaintiff was not entitled to recover by reason of bad faith, having made it impossible to bring Lackey and Jarboe into the case, and thereby prohibited defendant from asserting this defense.

The issues were completed by plaintiff's reply denying all matters alleged by answer.

The case was tried to a jury which, by the verdicts rendered, found the facts to be substantially as summarized hereafter.

Defendant, operator of a truck line which hauled cattle, became acquainted with Lackey in 1960, who made several efforts to interest defendant in the feed lot business. In March 1961 defendant acceded to Lackey's urging and entered into negotiations for purchase of Parsons Feed Lot, Inc., in Parsons, Kansas, from one W. L.

Jarboe. Defendant and Lackey interviewed certain bank officials, including Jarboe, who also was a director of the Bank. The Bank's officers advised defendant they had been handling the financial affairs for years and knew the operation had been profitable. Negotiations culminated in execution of a conditional sale purchase contract by defendant and Lackey, under which they paid $30,000.00 down, equally divided as down payment, purchase of Jarboe's feed inventory, and operating capital. Although defendant paid two thirds of this amount, the corporate stock was divided equally between defendant and Lackey and wife, and Lackey moved onto the premises and assumed active management of the business. During the period of operations defendant did not have opportunity to examine the books, and had to rely upon Lackey's advice relative to the business.

On January 2, 1963, Lackey executed a corporate note for $10,000.00, and a second for $6,000.00 on February 6, 1963. The third note was executed by Lackey and defendant on April 19, 1963, and endorsed by W. L. Jarboe.

June 27, 1961, Lackey came to defendant's office in Vinita, Oklahoma, with a guaranty contract prepared by the Bank, by terms of which defendant was required to extend his personal guarantee of $30,000.00 credit for the corporation's operations. Defendant declined to sign the instrument on the grounds it was so broad it would ruin his credit and create liabilities against his family. However, Lackey advised defendant there was no intention to impress any liability, and the Bank desired the guaranty only for benefit of the bank examiners. After instructing Lackey it was not to be delivered until defendant had opportunity to discuss the matter with Bank's president defendant signed the instrument.

Some time later defendant and his wife called at the Bank, and at that time learned Lackey had delivered the guaranty to the president. Defendant insisted such an agreement would ruin his credit and, not knowing Lackey well, did not wish to be liable for loans he might make. The Bank's president advised defendant the agreement would be changed to reflect liability extended only to notes he signed personally, and a copy of the new agreement would be mailed defendant, but this was not done.

Under Lackey's management the operation was unprofitable and no returns were made upon defendant's investment. On April 19, 1963, defendant signed a company note for $6,000.00 to pay accumulated, past due grain bills. Jarboe, who was severely in arrears on his account for cattle fed by corporation endorsed this note, which is the basis of the third cause of action. Defendant signed this note in order to secure operating capital and keep the yard open long enough to effect a sale. Apparently proceeds of this note were used for other purposes, since the creditor later sued and recovered judgment.

On May 13, 1963, the Bank's president made telephone inquiry concerning past due notes owed by the feed yard. Upon defendant's declaration of no indebtedness other than note of April 19, 1963, the Bank advised him of other notes then past due. When defendant disclaimed any responsibility for notes not signed personally the Bank asserted the original guaranty was in force and threatened legal action. Thereafter the sellers (Jarboe et al.) took the business back under the conditional sale contract, and Lackey continued employment under Jarboe.

It is of interest to note that on May 25, 1963, the Bank wrote Lackey, as president, concerning his misapplication and use of money collected from accounts receivable, previously assigned by the corporate defendant to the Bank. This letter advised such use of collections for other purposes constituted conversion, and demanded all further accounts collected be brought directly to the Bank.

In asking reversal of this judgment the Bank asserts the controlling issue is whether the jury's verdicts were so inconsistent as to have required granting of a new

trial. It is urged the essential question was whether defendant was bound under the written guaranty, since the execution of the loans and non-payment were alleged and proved. The Bank concludes that if defendant was liable it was necessary to find liability upon each of three causes of action, thus if liable on the third cause of action then the verdict was inconsistent with the other causes of action.

To support the argument the Bank relies upon the rule expressed in Dickerson, Sheriff v. Waldo, 13 Okl. 189, 74 P. 505, and First Nat. Bank & Trust Co., etc. v. Mitchell, 191 Okl. 206, 127 P.2d 825. In each cited case the trial court submitted special interrogatories, after which the jury returned a general verdict for the defendant, but answered the interrogatories in such manner as to create confusion between the verdict and the special findings. The rule stated as basis for reversal in each instance was that such contradictory result showed the jury's failure to accurately analyze the evidence and intelligently consider the case. The rule relied upon has no application to the present appeal.

The Bank asserted separate causes of action as to each note, based upon the alleged written guaranty. Defendant admitted execution of the guaranty, and further alleged such instrument was void and unenforceable because induced by fraud, deceit and misrepresentation and fraudulently delivered. Evidence surrounding execution and delivery of the guaranty was conflicting. The trial court instructed the jury carefully relative to statutory definitions, nature and essential elements of such contracts. And, in connection with this issue, further instructed the jury concerning the nature and effect of fraud, deceit and misrepresentation in respect to defendant's liability under the guaranty.

■ The issue of fraud raised by defendant presented a question of fact which defendant was required to prove by clear and satisfactory evidence. Gold Kist Peanut Growers Assn. v. Waldman, Okl., 377 P.2d 807, and cases cited. The conflicting nature of the evidence relative to this issue was mentioned above. By this verdict, the jury determined the written guaranty relied upon was void and unenforceable by reason of fraud and deceit practiced upon defendant. There is sufficient competent evidence to support the jury's finding upon this issue, and the judgment will not be disturbed on appeal.

■ Relative to the asserted inconsistency of the verdicts, the further argument is the jury by misapprehension must have decided defendant bound himself individually by signing the third note involved. This note was executed when the corporate defendant already was involved financially and, as disclosed by the Bank's evidence, was to provide operating capital while defendant attempted to effect a sale. The financial situation was such the Bank would not have loaned further money without additional security. The note was signed by defendant and endorsed by Jarboe to secure operating capital. The evidence disclosed this was an independent transaction between defendant and the Bank. Having determined no liability arose under the purported guaranty, the finding of liability on the note admittedly executed personally by defendant to satisfy creditors, was not in conflict with the other findings.

■ A further argument advanced concerns the trial court's failure to give a requested instruction. The complaint is that had the requested instruction been given, the jury would have been better informed, and would have understood that execution of the original obligation at the same time meant contemporaneously and not the same day. The instructions given advised the jury of applicable law by use of the language of the statutes governing contracts of guaranty. Defendant admitted, and evidence showed, execution of the alleged guaranty prior to effective date of any note. The issue was not whether the contract and notes were executed contemporaneously as part of the same agreement. The determinative issue involved the question whether the guaranty was binding in

view of the facts surrounding the inducement, execution and delivery of the guaranty. The requested instruction dealt with a matter which was of no materiality in respect to the controlling issue. A requested instruction as to an immaterial issue, or upon an issue not vital to the action properly is refused. Key v. British American Oil Prod. Co., 196 Okl. 663, 167 P.2d 657.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, HODGES, LAVENDER, and McINERNEY, JJ., concur.

DAVISON, J., concurs in result.